(58 N. W. Rep. 339.)

---

THOMAS HAVERON *vs.* H. T. ANDERSON, *et al.*

Opinion filed March 3rd, 1894.

**Claim and Delivery—Burden of Proof.**

> Where, in an action to recover the possession of goods and chattels, the plaintiff alleges, as ground of action, that he is the owner of the property, and plaintiff's allegations of ownership are put in issue by the answer, and title alleged in the defendants, the burden of proving ownership at the trial is with the plaintiff, and a failure to introduce evidence tending to show plaintiff's ownership is fatal to the plaintiff's case.

**Striking Out Evidence—Directed Verdict.**

> Accordingly, *held*, in such case, where, at the close of the case, it appeared that the defendants were the owners of the property in controversy, and plaintiff had offered no testimony tending to establish ownership in himself, that it was not error in the District Court, on motion of the defendants, to strike out of the record all evidence offered by plaintiff to support his claim of ownership; nor, after striking out such evidence, was it error to direct the jury to return a verdict to the effect that the defendants were the owners of the property, and entitled to a return thereof.

**Question of Value for Jury.**

> *Held,* further, in such case, that it was not error, the value of the property being in dispute, to submit the question of value upon the evidence for the consideration of the jury.

**Motion to Strike Out Evidence.**

> Certain evidence examined, and *held,* that a motion to strike out such evidence was properly denied.

Appeal from District Court, Walsh County; *Templeton, J.*

Action in claim and delivery by Thomas Haveron against H. T. Anderson and another. There was judgment for defendants, and plaintiff appeals.

Affirmed.

*Phelps & Phelps,* for appellant.

*Sauter & Fraine,* for respondents.

WALLIN, J. This is a claim and delivery action brought to recover the possession of a quantity of grain,—wheat, oats, and barley,—which grain, it is admitted, originally belonged to the defendants, and was in their possession when the plaintiff caused it to be taken out of defendants' possession and removed to Minto, where it was sold and disposed of by the plaintiff. It is conceded that plaintiff threshed a large quantity of grain for defendants in the year 1891, and that, upon settlement had upon December 21st of that year, it was found that defendants were indebted to plaintiff on account of said threshing in the sum of $670, for which amount the plaintiff, on December 22, 1891, filed a claim for a thresher's lien. The lien covered all the grain in controversy in this action. In his original complaint, plaintiff bases his right to recover the possession of the grain in question upon a claim of special property therein arising upon such thresher's lien. For reason which do not appear of record, the trial court, on motion of plaintiffs counsel, struck from the complaint all allegations therein relating to the thresher's lien. As amended, the complaint was in the ordinary form, and alleged that plaintiff was the general owner of the grain, and that defendants had unlawfully taken, and were then unlawfully detaining,

the same from the plaintiff, and demanded a return of the grain or its value, *i. e.* $670. Defendants' answer, as amended, alleged title in defendants, and contained a denial of the plaintiff's ownership, and of the unlawful taking and detention, and demanded judgment for the return of the grain or its value, laid at $1,005. It will be convenient to state here that the original answer of the defendants was responsive to the original complaint, and joined issue upon the averments as to the alleged thresher's lien of the plaintiff, and also set out, as a counterclaim, that the plaintiff unlawfully took from the possession of the defendants, and converted to his own use, certain quantities of wheat, oats, and barley. On plaintiff's motion, this alleged counterclaim was stricken from the answer, but at the trial the defendant H. T. Anderson, against plaintiff's objection, was allowed to testify as to the quantity and kind and value of the grain removed by plaintiff from the possession of the defendants. A motion to strike out such testimony was denied. At the close of the testimony, on motion of defendants' counsel, the trial court struck from the record all evidence relating to plaintiff's ownership of the grain in suit, and directed the jury to find a verdict for the defendants, and find the value of the grain at the time it was taken out of defendants' possession by plaintiff. The only question submitted to the jury was as to the value of the grain when taken. The following is the verdict: "We, the jury in the above entitled action, find for the defendants that they are the owners of the wheat, oats, and barley described in the complaint, and are entitled to a return thereof." The verdict then found the value of each kind of grain separately, and the total value at $587.67 Judgment was entered on the verdict, and, after a bill of exceptions was filed, plaintiff appealed from the judgment. There is no claim in this court that the verdict as to the kind, quantity, or value of the grain is not justified by the evidence. No error of this character is assigned.

Appellant assigns three errors predicated upon the rulings of the trial court. Briefly stated, such errors are as follows: *First,*

That it was error to strike from the record all evidence relating to the plaintiff's alleged ownership of the grain; *second*, that it was error to overrule plaintiff's motion to strike from the record all evidence given by H. T. Anderson touching any grain taken out of defendants' possession by plaintiff, which motion was made upon the ground that such evidence had reference only to the grain described in defendants' counterclaim, which counterclaim had been stricken out; *third*, that it was error to instruct the jury to find a verdict for defendants. We are of the opinion that these assignments of error cannot be sustained. The principal issue in the case, arising upon the amended pleadings, was that of general ownership of the grain, which was alleged in behalf of both parties. Plaintiff had the burden of showing that he had title and ownership of the grain in suit when the action commenced. Failing in that, his taking possession and disposing of the grain was, for the purposes of this action a trespass *ab initio*. We think his evidence signally failed, and did not tend in the least, to show that the original title to the grain had been transferred to him by the defendants, who raised the grain. We do not feel justified in reciting the evidence in detail. It has been carefully read and considered by each member of the court, and we are all of the opinion that no evidence was offered tending to show a sale of the grain to the plaintiff. It appears that, at different times in the summer of 1892, negotiations were had between the plaintiff and his agents and attorney on one side, and the defendants on the other. Several interviews took place. Plaintiff and those representing him were urging defendants to pay said threshing bill to plaintiff, and defendants were informed that, unless payment was made promptly, legal proceedings under the lien would be instituted, and that plaintiff would replevin the grain in question, and that a sale under legal proceedings must then follow. It seemed to be taken for granted that legal proceedings to foreclose the lien would be expensive, and that such proceedings should be avoided if possible. It appears that defendants' teams were busy at that time, and hence defendants could

not haul the grain from their farm to town; but the parties agreed that it was fairly worth four cents per bushel to transport the grain from defendant's farm to market, and that plaintiff should procure teams, and transport the grain to market for that sum per bushel. The arrangement was that plaintiff should take the defendants' wheat, and apply it, at an agreed price per bushel, to discharge plaintiff's claim for threshing; and, as the amount of the defendants' wheat was then not definitely known, it was further agreed that the shortage in wheat, if any, should be made good out of defendants' barley and oats, then in defendants' possession. The barley and oats necessary to pay the bill were to be taken to market, and disposed of by plaintiff to the best advantage, and the proceeds applied upon the balance not paid by the wheat. But no agreement was made between the parties as to the price of the oats or barley; on the contrary, the price was left uncertain as well as the quantity. Under this arrange-ment, plaintiff's attorneys sent one Lawrence Herie with wagons to defendants' premises, with instructions to haul away the grain. Herie went to defendants' granary, and loaded on his wagons a part of two loads of wheat,—some 50 or 60 bushels,—when both defendants appeared, and forbade him from taking or removing the grain. Why this was done does not appear. The wheat on the wagons was taken away, and put in an elevator. The balance of the grain in suit was taken in this action by the sheriff, and by him removed, and sold to satisfy the lien. Herie was a witness for plaintiff; and, after describing the loading of the wheat on his wagons, as before stated, he was asked: "Q. And you took possession for whom? A. Took posssession of the wheat under your instructions as plaintiff's attorney to foreclose the lien; took possession under the agreement that I had with Mr. Anderson." The sheriff testified for the plaintiff, and, among other things, said: "I took this wheat, oats, and barley, in this action under the claim and delivery proceedings." Also: "I did the best I could, and this wheat and grain was sold under a foreclosure of the thresher's lien. The barley would only bring 20 cents, and

the oats were worth what I sold them for,—20½ cents per bushel."
Comment upon this evidence would be superfluous. We do not
see, in the whole testimony, a *scintilla* of evidence looking to a
transfer of title from the defendants to plaintiff. We fail to
discover in the evidence as much as a proposition to buy the grain
outright. All of the negotiations looked to a sale in the market
to avoid foreclosure proceedings. Even this arrangement was
receded from by the defendants and the grain was then taken and
sold to foreclose the alleged lien. The original complaint also
indicates that, when the action commenced, the plaintiff's
counsel was of the opinion that the grain was taken to foreclose a
lien; but that theory was abandoned at the trial, and no attempt
was made to justify under the lien. In this state of the evidence,
it was not error to strike from the record all evidence, or pre-
tended evidence, of a sale of the grain by the defendants to
plaintiff; nor was it error to instruct the jury to find a verdict for
defendants that they were the owners of the grain, and entitled to
a return thereof. There being some conflict in the evidence as
to the quantity and value of the grain taken, it was proper and
necessary to submit the question of kind and value to the jury;
and this was done, and their verdict upon this feature is in no
wise assailed in this court.

One of the defendants testified as to the quantity and value of
the grain taken by plaintiff from defendants' premises, and the
court allowed this testimony to remain in the record, and refuse
to strike it out, upon the ground that it was not competent or
relevant, after the court had stricken the counterclaim from the
answer. This is assigned as error, but we cannot sustain the
assignment. The complaint charged that plaintiff was the owner
of certain grain described, and that it was of a certain value; also,
that defendants unlawfully took, and unlawfully detained, said
grain from the plaintiff, to plaintiff's damage in the sum of $700.
The amended answer denied all of these averments, and alleged
"that plaintiff wrongfully disposed of said property, and con-
verted the proceeds thereof to his own use." Defendants prayed

for a return of the property or its value, alleging its value at $1,005. The fact that plaintiff caused the grain to be removed from defendants' possession and sold was shown by plaintiff, and was conceded. This being true, it was important to ascertain the kind and value of the grain removed; and, until this was shown by testimony, no intelligent verdict would be possible. Under the pleadings, it was therefore competent for defendants, as well as plaintiff, to put in evidence upon these vital features of the case.

The judgment must be affirmed. All concur.